UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Elder Rodrigues,

                            Plaintiff,

    v.

American Security Insurance Company et al.,

                            Defendants.

**Report and Recommendation**

17-CV-337V

---

I.    **INTRODUCTION**

Plaintiff Elder Rodrigues ("Rodrigues") bought a house in the City of Buffalo and took out a mortgage loan to cover the purchase. Rodrigues soon ran into financial trouble, defaulting on the mortgage obligations, neglecting to buy insurance for the house, and filing for bankruptcy. The mortgage lender—actually a series of lenders over time that included defendants Green Tree Servicing LLC and Ditech Financial LLC (collectively "Green Tree")[1]—went ahead and bought insurance for the house to protect its interests. Defendant American Security Insurance Company ("American") issued the policy. The insurance became an issue when a fire gutted the house on June 2, 2014 and prompted the City of Buffalo to perform an emergency demolition. American paid the insurance proceeds to Green Tree in accordance with the mortgage agreement and the insurance policy, but Rodrigues believes that he should have received the proceeds because he was the named insured on the policy. An additional complicating factor here is that foreclosure

---

[1] Except when tracing events specific to individual companies, the Court will refer to the defendant mortgage lenders collectively as Green Tree because they merged in 2015. (Dkt. No. 1 at 1.)

proceedings began some time ago against the property in question but have not concluded. As a result, Rodrigues remains the formal owner of the property, and the City of Buffalo has assessed the cost of the emergency demolition against him.

To obtain the insurance proceeds to which he considers himself entitled, Rodrigues filed suit in state court on February 22, 2017. American removed the case and brought it here on April 20, 2017. American and Green Tree then filed motions to dismiss under Rule 12[2] of the Federal Rules of Civil Procedure ("FRCP"). (Dkt. Nos. 4, 11.) American considers Rodrigues's action untimely because of a provision in the insurance policy that created a two-year limitations period. All defendants argue that the mortgage agreement and insurance policy operated as they should have, directing the insurance proceeds not to Rodrigues but to the mortgage lender, which had a protected interest. Rodrigues counters that if his name appears on the policy as the named insured, and if he remains on the hook for demolition costs because he still is the formal owner, then the insurance proceeds should have gone to him.

District Judge Lawrence J. Vilardo has referred this case to this Court under 28 U.S.C. § 636(b). (Dkt. No. 7.) The Court held oral argument on August 8 and October 11, 2017. For the reasons below, the Court respectfully recommends granting both motions.

---

[2] Technically, Green Tree's motion is under Rule 12(b)(6) while American's motion is under Rule 12(c) with an alternative request for relief under Rule 56. Putting aside the alternative request, the Court will treat both motions as Rule 12(b)(6) motions since the same standard governs. *See Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994) (citation omitted); *accord Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006) (citations omitted).

2

## II. BACKGROUND

This case concerns allegations that American paid insurance proceeds to Green Tree instead of to Rodrigues after a house fire, in a way that Rodrigues considers fraudulent. The house in question stood at 558 Fargo Avenue in Buffalo, New York. Rodrigues bought the house in 2006 and entered a mortgage agreement on June 29, 2006 in the amount of $52,500. (Dkt. No. 4-3.) Rodrigues was the sole borrower for the agreement; the lender was listed as "America's Wholesale Lender," a tradename for Countrywide Home Loans, Inc. Among other obligations, Section 5 of the mortgage agreement created certain obligations pertaining to property insurance. Under Section 5, Rodrigues had the obligation to maintain coverage that the lender found satisfactory. If Rodrigues failed to obtain property insurance then the lender could choose to do so at his expense. (*See* Dkt. No. 4-3 at 7–8.) Any coverage that the lender purchased would cover the lender without any guarantee that it would cover Rodrigues. (*See id.* at 8.) Any proceeds of the insurance policy that the lender obtained would be used "to repair or to restore the damaged Property," unless any of three conditions existed, one of them being that "it is not economically feasible to make the repairs or restoration." (*Id.*) If repair or restoration were not economically feasible then any insurance proceeds would be used to reduce the amount owed under the mortgage agreement. (*Id.*) Federal law and New York law governed the mortgage agreement. (*Id.* at 12.)

Over the next several years, Rodrigues suffered a series of financial setbacks. At an unspecified time that probably was prior to 2008, Rodrigues defaulted on his mortgage obligations. Rodrigues has included in his papers a document from Countrywide that shows

3

payments made through July 2007 (Dkt. No. 21 at 8–9); the Court cannot tell whether Rodrigues included this document to indicate that he made no mortgage payments beyond that point. Around this time, Rodrigues also stopped paying for property insurance for the Fargo Avenue house. In 2008, Rodrigues filed for Chapter 7 bankruptcy in the Northern District of California. On September 9, 2008, Rodrigues received a Chapter 7 bankruptcy discharge. (Dkt. No. 21 at 5.) The bankruptcy discharge included Rodrigues's personal obligations to the Fargo Avenue house, determined at the time to be $52,256. (*Id.* at 7.) The bankruptcy discharge explained to Rodrigues that creditors no longer could attempt to collect from him any debts covered by the discharge. (*Id.* at 6.) Creditors could, however, continue to enforce mortgage liens against the property itself, as long as any lien in question had not been eliminated as part of the bankruptcy discharge. (*Id.*) The record in this case contains no information indicating that Countrywide's mortgage interest in the Fargo Avenue house was eliminated; Countrywide simply could not pursue Rodrigues anymore. *See* 11 U.S.C. § 524(a)(2). Rodrigues appears to have achieved mixed success in avoiding any further attempts at collection. When the mortgage obligation passed from Countrywide to Green Tree,[3] Green Tree sent Rodrigues at least one mailing that stated explicitly, "This communication is from a debt collector. It is an attempt to collect a debt and any information obtained will be used for that purpose." (Dkt. No. 13 at 63.) When the mortgage obligation changed hands one more time to Ditech, Ditech's statements contained the disclaimer, "This is not a bill. This statement is for informational purposes only. If you were an obligor on

---

[3] The record does not appear to contain the complete history of creditor transfers, but it does contain some documentation that the mortgagee rights for the Fargo Avenue house passed at some point from Countrywide to Bank of America, and then to Green Tree on June 1, 2013. (*See* Dkt. No. 13 at 50-51.)

4

this account prior to the filing of a Chapter 7 bankruptcy, and you have received a discharge, and if the debt was not reaffirmed in the bankruptcy case, Ditech is exercising only its rights under the security agreement as allowed by law. Ditech is not attempting any act to collect or recover the discharged debt as your personal liability. If the above amount is not received by the stated date, Ditech may exercise its right to seek possession of the collateral." (*Id.* at 65, 67.)

Once Rodrigues stopped buying insurance for the Fargo Avenue house, the lender stepped in to maintain coverage. Through several letters sent between April and June 2014, Green Tree advised Rodrigues that it went ahead and purchased a policy with coverage of $40,000 and a premium of $483. (Dkt. Nos. 18-1; 18-2; 18-3 at 2.) The policy took effect on June 1, 2014 and contained a provision that bears on the pending motions. Section 15, titled "Mortgage Clause," specified that "[i]f a mortgagee is named in this policy, any loss payable under the policy shall be paid to the mortgagee and you, *as interests appear*." (Dkt. No. 18-3 at 14 (emphasis added).) Rodrigues was listed as the named insured.[4] The policy also contained a limitations provision with the following language: "No action shall be brought unless there has been compliance with the policy provisions and the action is started within two years after the occurrence causing loss or damage." (*Id.* at 18.)

---

[4] Rodrigues has directed the Court's attention to a letter from American that listed him as an additional insured and not the named insured. (Dkt. No. 13 at 49.) The letter, however, was a notice of cancellation and not the policy itself. Since all sides agree that Rodrigues was the named insured on the policy at all times, the discrepancy in the cancellation letter appears to be a clerical error. (*See* Dkt. No. 18 at 3.) In any event, for the reasons explained below, the discrepancy does not change how the mortgage agreement and the policy operated under the circumstances present here.

While Rodrigues's financial setbacks unfolded, three setbacks involving the Fargo Avenue house occurred as well. On May 27, 2009, the house suffered a fire that caused $35,000 in damages. (Dkt. No. 13 at 55–58.) Fire investigators suspected arson, listing an intentional cause of ignition, an "incendiary device" as the ignition heat source, and the use of an accelerant. On January 3, 2014, Green Tree commenced foreclosure proceedings in state court. (Dkt. No. 13 at 3.) The foreclosure proceedings have not yet concluded, leaving Rodrigues as the formal owner of the house—a point that becomes significant later in that year. On June 2, 2014, the house suffered a second fire that caused $40,000 worth of damage and destroyed it. (*Id.* at 59–62.) The cause of the fire was undetermined as of the writing of the fire report. The City of Buffalo deemed the house not salvageable and a safety risk, and proceeded with emergency demolition. The record does not contain any documentation from the City of Buffalo regarding demolition, but the parties do not dispute Rodrigues's assertions that the City has been attempting to recover some $50,000 or so in demolition costs from him, because he remains the formal owner of the property pending the conclusion of foreclosure proceedings. American did not receive notice of the fire until October 9, 2014, when Green Tree submitted a notice of claim. (Dkt. No. 11-14 at 2–3.) Given the total loss of the house and the damage estimate, American decided to pay Green Tree the full amount of the policy. American issued a check in the amount of $40,000 on April 29, 2015. (Dkt. No. 11-26 at 2.) Green Tree currently is holding the insurance proceeds in escrow. (Dkt. No. 18-4 at 8.) With the limits of the policy paid out and no asset left to insure, Green Tree canceled any further coverage. (Dkt. No. 13 at 49.)

6

Rodrigues eventually commenced litigation, figuring that if he had been the named insured on the policy and if he remains the formal owner of the property and on the hook for demolition costs, then the insurance proceeds should have gone to him. Accordingly, Rodrigues filed a summons with notice in New York State Supreme Court, Erie County, on February 22, 2017. (Dkt. No. 1-1 at 2.) Rodrigues followed up with a *pro se* complaint in state court on April 11, 2017. (Dkt. No. 1-5.) The Court discerns three distinct causes of action in the complaint plus what it will call an omnibus cause of action. In paragraph eight, Rodrigues accuses Green Tree of fraud by selling or reassigning the mortgage obligation to Ditech after taking the insurance proceeds from American. In paragraph nine, Rodrigues accuses American of fraud by changing his status on the insurance policy from a named insured to an additional insured. In paragraph 10, Rodrigues accuses Ditech of fraud by pursuing him for payments on the mortgage even after his bankruptcy discharge. Paragraph 11 is a farrago of allegations against all defendants, including violations of various sections of the New York Insurance Law, "misappropriation of funds, fraudulent activity, neglect of lawful insurance obligation and breach of contractual obligation which led to full demolition of property owned by plaintiff." (*Id.* at 3.) Rodrigues seeks damages in the amount of $1,554,800. On the basis of diversity jurisdiction, American removed Rodrigues's case to federal court by filing a notice of removal on April 20, 2017. (Dkt. No. 1.)

Defendants filed their motions to dismiss on April 27 and June 14, 2017. In short, defendants argue that undisputed documentary evidence establishes that the mortgage agreement and insurance policy operated to make Green Tree the appropriate recipient of the insurance proceeds. Rodrigues defaulted on the mortgage and stopped purchasing insurance; Green Tree

7

stepped in to buy insurance coverage to protect its interests; and those interests took priority under the insurance policy. American, according to defendants, thus did nothing wrong in sending payment to Green Tree. Defendants argue further that Rodrigues has failed to articulate any fraudulent activity at all, let alone fraudulent activity that meets the particularity standard of FRCP 9(b). American adds arguments that the provisions of the New York Insurance Law that Rodrigues cited in his complaint do not even apply to the situation here; and that Rodrigues's complaint is untimely because it falls outside of the two-year limitation provision in the insurance policy. Finally, defendants fault Rodrigues for failing to give notice of the second fire and for misunderstanding the difference between the discharge of personal liability from the bankruptcy court, which happened here, and the dissolution of the underlying mortgage debt itself, which did not.

Plaintiff opposes defendants' motions in all respects. Plaintiff maintains his position that his status as the named insured on the policy, and as the formal owner of the property, entitled him at least to some say in the insurance payout process if not to the proceeds themselves. Plaintiff also insists that his appearance on the cancellation letter as an additional insured, combined with the lack of notice about the insurance proceeds, the timing of the insurance cancellation, and the continued issuance of statements about the mortgage debt, together amount to fraudulent activity infringing on his bankruptcy discharge.

### III. DISCUSSION

#### A. *Motions to Dismiss Generally*

"As an initial matter, the Court is mindful that [Rodrigues is] proceeding *pro se*, and that [his] submissions should thus be held to less stringent standards than formal pleadings drafted by lawyers. Moreover, when plaintiffs bring a case *pro se*, the Court must construe their pleadings liberally and should interpret them to raise the strongest arguments that they suggest. Still, *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Rotblut v. Ben Hur Moving & Storage, Inc.*, 585 F. Supp. 2d 557, 559 (S.D.N.Y. 2008) (internal quotation marks and citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). Courts assess Rule 12(b)(6) motions "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 61 (2d Cir. 2010) (internal quotation marks and citation omitted). "On a motion to dismiss, the court may consider any written instrument attached to the complaint as an exhibit or

any statements or documents incorporated in it by reference." *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001) (editorial and internal quotation marks and citation omitted). "Simply stated, the question under Rule 12(b)(6) is whether the facts supporting the claims, if established, create legally cognizable theories of recovery." *Cole-Hoover v. Shinseki*, No. 10-CV-669, 2011 WL 1793256, at *3 (W.D.N.Y. May 9, 2011) (internal quotation marks and citation omitted).

Next, the Court must decide whether to consider documents that have become part of the record but lie outside of the complaint. "Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials. Generally, we do not look beyond facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (internal quotation and editorial marks and citation omitted). "Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint. However, even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks and citations omitted). "A document is integral to the complaint where the complaint relies heavily upon its terms and effect. Merely mentioning a document in the complaint will not satisfy

this standard; indeed, even offering limited quotations from the document is not enough. In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Goel*, 820 F.3d at 559 (internal quotation and editorial marks and citations omitted).

Applying this standard, the Court can consider the documents in the record. Within the three pages of Rodrigues's brief complaint, he makes explicit reference to his mortgage, foreclosure proceedings, fire damage, the insurance policy, transfers of the mortgage, changes in the named insured, and his bankruptcy discharge. While Rodrigues did not attach these documents to the complaint, all of his allegations about fraud and Insurance Law violations hinge on how all of these documents interact with each other. In this sense, the documents are integral to the complaint, and Rodrigues effectively has incorporated them by reference. Additionally, Rodrigues and defendants subsequently did provide copies of the various documents in their motion papers. No one disputes the accuracy and authenticity of the copies of these documents that appear in the record; the only dispute, as big as it may be, is how those documents operated to bring about certain events. Accordingly, the Court has relied on all of the documents that the parties have provided and has cited to them as needed in the Background section above.

### B. *Operation of the Mortgage Agreement and Insurance Policy*

With all preliminary matters addressed, the Court now turns to the key issue that affects defendants' motions: the operation of the mortgage agreement and the insurance policy as they

11

pertain to Rodrigues's allegations.  Under Section 5 of the mortgage agreement, Green Tree would step in to buy insurance for the Fargo Avenue house if Rodrigues failed to do so, and any resulting coverage would cover Green Tree without any guarantee that it also would cover Rodrigues.  Rodrigues in fact stopped buying insurance for the house, and Green Tree went ahead and bought insurance for its own benefit.  A later portion of Section 5 contains language that insurance proceeds under the circumstances would go to Green Tree to pay down the amount of the mortgage if repair or restoration were not economically feasible.  Rodrigues attempts some argument about how he might have attempted to repair the house had he received the proceeds.  (*See* Dkt. No. 13 at 6.)  The City of Buffalo's decision to proceed to emergency demolition took that argument away and left Green Tree no option but to receive insurance proceeds to pay down the mortgage.  The way in which the mortgage agreement steered insurance proceeds to Green Tree coincides with how the insurance policy did the same thing.  Section 15 of the insurance policy, with its reference to making payment "as interests appear," gave Green Tree an independent insurable interest as the mortgagee.  "When a policy contains additional language to the effect that it is issued to the owner and the mortgagee 'as their interests may appear,' then there is recognized and covered also, the insurable interest of the mortgagee, to the extent of his interest; to that extent the insurance is for the mortgagee's benefit." *Fields v. W. Millers Mut. Fire Ins. Co.*, 48 N.E.2d 489, 490–91 (N.Y. 1943) (citations omitted); *accord EverHome Mortg. Co. v. Charter Oak Fire Ins. Co.*, No. 07-CV-98 RRM RML, 2012 WL 868961, at *5 (E.D.N.Y. Mar. 14, 2012) ("The insurance is for the mortgagee's benefit to the extent of the debt, and the mortgagee may recover from an insurer up to his secured interest.") (citing *Fields*; other citations omitted).

12

Together, the mortgage agreement and the insurance policy directed American to send any insurance proceeds to Green Tree to protect Green Tree's interest and to pay down the mortgage obligation.

Additionally, how the documents operated to direct the payment of insurance proceeds stands apart from the untimeliness of Rodrigues's litigation. The insurance policy contained language requiring litigation about coverage to commence "within two years after the occurrence causing loss or damage." (Dkt. No. 11-13 at 10.) Contractual limitations periods in insurance policies are enforceable. *See, e.g., Penna v. Peerless Ins. Co.*, 510 F. Supp. 2d 199, 209 (W.D.N.Y. 2007); *Enter. Eng'g, Inc. v. Hartford Fire Ins. Co.*, No. 04 CIV. 5018 (DLC), 2004 WL 2997857, at *2 (S.D.N.Y. Dec. 23, 2004). The fire that destroyed the Fargo Avenue house occurred on June 2, 2014. Rodrigues thus would have had until June 2, 2016 to commence litigation; he instead filed suit in state court on February 22, 2017. With respect to any claim implicating the operation of the insurance policy, Rodrigues simply has filed too late.

In the face of undisputed documentation of how the insurance proceeds should have been directed, plus Rodrigues's untimeliness, dismissal of the case is appropriate. The complaint fails to plead why the case should be considered timely. The complaint contains a conclusory assertion that Rodrigues should have received the insurance proceeds but sets forth no "short and plain statement," FRCP 8(a)(2), showing why. The complaint also lacks any short and plain statement explaining the alleged violations of the New York Insurance Law. With respect to the allegations about violating the bankruptcy discharge, Rodrigues simply has misunderstood the difference between attempts to collect payment from him and informational statements to him. Finally, the

13

complaint contains very conclusory assertions of fraud without coming anywhere near the level of particularity required by FRCP 9(b). The Court understands why Rodrigues might be concerned about how long foreclosure proceedings have lasted and how the delay led to the City of Buffalo to assess demolition costs against him. Perhaps some resolution to that problem can be found, but it cannot be found through this case.

IV. CONCLUSION

For all of the foregoing reasons, the Court respectfully recommends granting defendants' motions to dismiss. (Dkt. Nos. 4, 11.)

V. OBJECTIONS

A copy of this Report and Recommendation will be sent to Rodrigues by first-class mail, and to defense counsel by electronic filing, on the date below. Any objections to this Report and Recommendation must be electronically filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. § 636(b)(1); FRCP 72. "As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point." *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted).

SO ORDERED.

__/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: November 22, 2017

14